United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 12, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 04-51293

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

JOSE ALEJANDRO MALDONADO,

Defendant-Appellant

Appeal from the United States District Court
For the Western District of Texas

Before JOLLY, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-appellant Jose Alejandro Maldonado (Maldonado) appeals his conviction for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Maldonado asserts that the district court erred in (1) denying his motion to suppress evidence as seized in violation of the Fourth Amendment[1] and (2) in admitting

---

[1] On appeal, the government seeks to question Maldonado's standing to complain of the allegedly illegal seizure. As the government raised no issue of standing below, we decline to

evidence of his prior arrest.  We affirm.

I.

On May 30, 2003, agents planned to execute an arrest warrant for Gerardo Castillo (Castillo), Maldonado's alleged co-conspirator.  Agents did not know where Castillo was located, but they had his cell phone number.  An agent called Castillo and asked him if he would be willing to "move two squares" (street slang for transporting two kilograms of cocaine).  Castillo agreed, but refused to meet the agent in a public place as the agent suggested.  Instead, Castillo asked the agent to come to the trailer home "where he was staying."  The agent agreed.  The agents were unaware that the trailer was Maldonado's residence.  Castillo gave the phone to Maldonado and asked him to give the caller directions, which included only a physical description of the trailer and how to find it by following various landmarks.  The agent did not know anything about the person who gave him directions, only that he was Castillo's "friend."

Approximately 20 to 30 minutes later, Castillo called the agent back stating that he had something else to do and asking the agent to hurry up and get there.  The agent told Castillo that he would be there shortly.  Approximately eight agents arrived at the trailer soon thereafter and established surveillance.  When the

consider its contentions in this regard and accordingly assume, as all parties did in the district court, that Maldonado has standing.

2

agents arrived at the trailer at approximately 4:30 P.M., they were not certain they were at the correct location. The agents instructed an undercover agent to drive up to the trailer and honk his horn. At this time, a couple of agents were approximately 100 yards away in a parked vehicle.

When the undercover agent honked his horn, Castillo came out of the trailer and got into the undercover vehicle. Agents then swarmed in and arrested Castillo in the driveway. Two agents approached the trailer to cover all sides. While Castillo was being arrested, one agent noticed someone open the trailer door, peek out, and then quickly close the door. The agents were in front of the trailer and had very little cover because the trailer sits in an open area with only a telephone pole to afford cover. Police insignia were visible on the agents' vests and jackets.

An agent approached the trailer door, yelled to the individual inside that they were police executing an arrest warrant, and opened the door. Maldonado exited and an agent placed him on the ground. As other agents were rushing inside the trailer, Maldonado was asked whether anyone else was inside. Maldonado indicated in Spanish that no one else was in the trailer. Agents swept the trailer, looking in places where a person could be hiding to make sure no one else was inside the trailer who could attack them. During this sweep, in the master bedroom closet, they discovered and seized several packages in plain view that appeared to be

3

narcotics. These packages contained approximately 314 pounds of marijuana.

Before trial, Maldonado moved the district court to suppress the introduction of any evidence relating to the seized marijuana on Fourth Amendment grounds. The district court found that the protective sweep by the agents was justified by exigent circumstances and denied Maldonado's motion to suppress. After a jury trial, Maldonado was found guilty of conspiracy to distribute marijuana and was sentenced to 120 months imprisonment with 5 years of supervised release. Maldonado appeals his conviction.

II.

Maldonado first challenges the district court's denial of his motion to suppress the evidence obtained in the warrantless entry. The district court explained that the agents' entry into the trailer was motivated by exigent circumstances because the agents feared for their safety and that the agents did not create the exigency.

When reviewing a district court's ruling on a motion to suppress, we accept the court's factual findings unless clearly erroneous or influenced by an incorrect view of the law. United States v. Foy, 28 F.3d 464, 474 (5th Cir. 1994). The presence of exigent circumstances is a finding of fact reviewed for clear error. United States v. Richard, 994 F.2d 244, 248 (5th Cir. 1993). We view the evidence in a light most favorable to the

4

prevailing party. United States v. Laury, 985 F.2d 1293, 1314 (5th Cir. 1993). We may consider not only the evidence from the suppression hearing, but also evidence presented during the trial. United States v. Rico, 51 F.3d 495, 504 (5th Cir. 1995). We review questions of law, including whether the district court's ultimate conclusions of Fourth Amendment reasonableness are correct, de novo. United States v. Paige, 136 F.3d 1012, 1017 (5th Cir. 1998).

Warrantless entry into a home is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 587, 100 S. Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). However, we have upheld warrantless protective sweep searches based upon exigent circumstances. See United States v. Watson, 273 F.3d 599 (5th Cir. 2001). Nevertheless, where agents create the exigency, the warrantless activity is per se unreasonable and any evidence obtained thereby must be suppressed. United States v. Webster, 750 F.2d 307, 328 (5th Cir. 1984).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L.Ed.2d 276 (1990). The protective sweep doctrine may apply even if the arrest occurs outside the home. See Watson, 273 F.3d 599; see also United States v. Merritt, 882 F.2d 916, 921 (5th Cir. 1989); Kirkpatrick v. Butler, 870 F.2d 276 (5th Cir. 1989).

5

Maldonado does not assert that the agents exceeded the acceptable scope of a protective sweep. Maldonado argues that the agents' entry into the trailer was invalid because they lacked a search warrant, no exigent circumstances were present and even if exigent circumstances were present, the agents created any exigency.

A.

The government has the burden of proving the existence of exigent circumstances. Rico, 51 F.3d at 501. To justify a protective sweep, the government must show "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334, 110 S. Ct. at 1098. Exigent circumstances include hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. Richard, 994 F.2d at 247-48. There is no set formula for determining when exigent circumstances justify a warrantless entry. United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997). In evaluating exigency, we "consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." United States v. Rodea, 102 F.3d 1401, 1405 (5th Cir. 1996) (internal quotations and citation

6

omitted).  If reasonable minds could differ, we do "not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation."  Blount, 123 F.3d at 838 (internal quotation marks and citation omitted).

The government argues that the agents' protective sweep was carried out in order to ensure that they and their colleagues would not come under fire from other individuals inside the trailer.  Under the facts and circumstances present in this case, we conclude that the district court did not err in concluding that a reasonable officer would have been legitimately concerned for his safety and that of others on the scene during the arrest.  The facts in the record and the rational inferences from those facts would warrant "a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene."  Buie, 494 U.S. at 334, 110 S. Ct. at 1098.

Castillo was arrested in the driveway.  This is near enough to the trailer to place the agents in immediate danger.  See Rico, 51 F.3d at 501.  "[I]f you are standing around in the front yard arresting people in the driveway, you need to make sure that there is not assistance to him by people in other parts of the premises."  Id. (internal quotation marks and citation omitted).  This is of particular concern in this case because the agents were exposed in an open area in front of the trailer with only a telephone pole to afford cover.  The area surrounding the trailer had no structures

7

or vegetation. Agent Shuttleworth, United States Immigration and Customs Special Agent, explained that cover behind the agents' vehicles was also not an option because the cars were not parked where the agents could effectively cover two sides of the trailer.

In addition to the lack of adequate cover, as Castillo was being arrested, the agents observed Maldonado peek outside and then close the trailer door. We have found exigent circumstances arising from similar actions. In <u>United States v. Webster</u>, we held that agents had reason to believe that evidence was in danger of imminent destruction after "someone peered between the curtains, as if acting as a lookout." 750 F.2d at 326-327. Although this case does not involve fear of evidence destruction, it does concern danger to the lives of the agents and others. Agent Sepulveda, Special Agent for Immigration and Customs Enforcement, testified that the opening and closing of the door at the time of Castillo's arrest caused the agents concern because they did not know how many individuals were in the trailer or if they had any weapons. Maldonado's actions were perceived as a threat because after he closed the door he was hidden and his intentions were unknown. The agents believed that the person possibly knew of Castillo's arrest and the presence of police because police insignia were visible on the agents' clothes.

The agents had no specific knowledge that weapons were inside the trailer. However, fear for officer safety may be reasonable

8

during drug arrests, even in the absence of any particularized knowledge of the presence of weapons, see United States v. Howard, 106 F.3d 70, 75 (5th Cir. 1997), because "in drug deals . . . it is not uncommon for traffickers to carry weapons." Rodea, 102 F.3d at 1408. In this case, the agents were aware that Castillo was being arrested for narcotics trafficking. Shuttleworth testified that guns are a major concern when arresting a person on a drug charge. Shuttleworth explained that "[w]hen you have narcotics, guns go hand in hand with that because of the large amounts of money involved."

The agents were only able to establish surveillance of the trailer for approximately three to four minutes before Castillo's arrest so they did not know how many individuals were in the trailer. The agents were not even certain that they were at the correct location and Castillo indicated that he would leave if the agent did not hurry up and get there. Also, after Sepulveda observed the opening and closing of the trailer door, events proceeded quickly. An agent approached the trailer door and announced the presence of police. Maldonado exited the trailer and was placed on the ground. Maldonado shouted that there was no one else inside. However, at this time the agents were already rushing inside to clear the trailer.

We recognize that there is no general security check exception to the warrant requirement. Kirkpatrick, 870 F.2d at 281.

9

However, depending on the circumstances, a protective sweep may be permissible even when the agents have no certain knowledge that other individuals are in the house. See, e.g., Watson, 273 F.3d 599; Howard, 106 F.3d 70; United States v. Mendoza-Burciaga, 981 F.2d 192 (5th Cir. 1992). In United States v. Watson, officers arrested the suspect, Watson, on the front porch of his house. Morse, the arresting officer, then made a protective sweep of the house to look for dangerous persons. Police officers were concerned that illegal drugs would be destroyed inside the suspect's house if they waited for a warrant. Also, the "officers believed that there was a possibility that [the suspect] might have additional accomplices who were still inside the house and could pose a threat to the officers' safety." 273 F.3d at 603. Morse "testified that he lacked specific reason to believe other individuals were in the house but that the possibility always exists." Id. at 601. We upheld the validity of the protective sweep even though "the factual basis for these concerns is disputable." Id. at 603.

In United States v. Howard, officers arrested the suspect on the porch of his house and proceeded inside on a warrantless entry to conduct a protective sweep to determine if anyone else was present. We found that exigent circumstances justified the officers' warrantless entry into the suspect's home on grounds of, inter alia, fear for the officers' own safety and the safety of

10

others, and the possibility that third persons inside the suspect's house may be alerted to police presence outside by the gathering of a crowd. The officers were aware that the defendant, Howard, had problems with his vision. We stated that "although the officers did not observe someone looking through Howard's window and did not see anyone else enter Howard's home and not exit," our inquiry is not so narrow. 106 F.3d at 77. "We must look to the <u>totality of the circumstances</u> and for both direct and circumstantial evidence of exigency." <u>Id</u>. (emphasis added). We concluded that the record contained enough circumstantial evidence to support a finding that the crowd may have alerted Howard to the presence of police: Howard's residence had been under surveillance for only a short time, there was a known narcotics-related traffic pattern in and out of the home, and the agent leading the investigation testified that he <u>did not know whether other persons besides Howard were inside the residence</u>. <u>Id</u>.

Like <u>Watson</u> and <u>Howard</u>, the agents did not know whether other individuals were in the trailer, yet they were concerned for their safety. The fact that the agents in today's case were not also concerned with the destruction of evidence does not preclude a finding of exigent circumstances. When determining whether an exigency exists, we look at the totality of the circumstances surrounding the officers' actions. <u>See</u> <u>United States v. Wilson</u>, 306 F.3d 231, 237-38 (5th Cir. 2002). We conclude that the brief

11

time available to conduct surveillance of the trailer, the exposure of the agents in the open area surrounding the trailer, the opening and closing of the trailer door during Castillo's arrest, and the reasonable expectation that weapons are present during drug transactions are sufficient circumstantial evidence to support a finding that the agents' fear was reasonable. Under these circumstances, the district court was not clearly erroneous in finding exigent circumstances justifying the protective sweep.[2]

## B.

However, this does not end the matter. We must also determine whether the government manufactured the exigency. "The government cannot rely on exigent circumstances to excuse a warrantless entry to conduct a protective sweep if the circumstances" were created by the government. Rodea, 102 F.3d at 1410 (internal quotation marks and citation omitted).

"We distinguish between cases where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances." Id. at 1409 (internal quotation marks and citation

---

[2]In reaching this conclusion, we do not hold that a protective sweep is permissible whenever agents do not know whether anyone else is inside a home. Lack of information alone cannot provide an articulable basis upon which to justify a protective sweep. See United States v. Colbert, 76 F.3d 773, 778 (6th Cir. 1996). Under the totality of circumstances present in this case, we find the agents had an articulable basis on which to support their reasonable suspicion of danger from inside the home.

omitted).  "In determining whether the exigent circumstances were manufactured by the agents, we must consider not only the motivation of the police in creating the exigency but also the reasonableness and propriety of the investigative tactics that generated the exigency."  Id.[3]  We look to whether (1) there was sufficient time to secure a warrant; and (2) whether the exigency was created by unreasonable law enforcement tactics.  Rico, 51 F.3d at 502-503.

The government argues that the agents did not obtain a search warrant in part because they had no interest in entering the defendant's residence and had not even known of its existence before Castillo arranged an immediate meeting there.  Castillo was the target rather than the trailer.  In addition, the record evidence indicates that the agents lacked sufficient time to obtain a warrant.  The agents had a warrant for Castillo's arrest.  The agents arranged a deal with Castillo to get him to meet with them. Despite the agent's attempt to meet Castillo in a public place, Castillo insisted on meeting "where he was staying."  The agents were not certain about the location of the trailer because they did not have an actual address. Sepulveda initially misled Castillo by saying that he was on his way when he was actually spending a few minutes assembling the arrest team.  Castillo then called the agent back complaining about the delay.  The agent assured Castillo that

_____

[3]Maldonado does not assert that the agents acted in bad faith.

13

he would be there shortly.

We have found that, where agents only conducted twenty minutes of surveillance, they did not have a complete address, and the operation was short and rapidly evolving, there was not enough time to procure a warrant. See United States v. Capote-Capote, 946 F.2d 1100, 1103 (5th Cir. 1991). In the instant case, the agents also had a fast-moving investigation, a short period to establish surveillance on the trailer, and were not certain about the location of the trailer. The district court did not err in finding that the agents had insufficient time to obtain a search warrant between the telephone call with Castillo and the agents' arrival.

We now consider the reasonableness of the law enforcement tactics used in this case, particularly, whether the agents created the exigent circumstances. The agents had the arrest warrant for Castillo and were interested in conducting a routine arrest. At the time of the initial telephone call to Castillo, the agents did not know where Castillo was. It was Castillo who rejected a public meeting in favor of the trailer where he was staying. The cocaine deal was a ruse to locate and arrest Castillo. It was reasonable for the agents to believe that Castillo would not have volunteered his whereabouts if not for the cocaine deal.

The arrangement between the undercover agent and Castillo to meet developed quickly. Once Castillo decided that he would meet the agents, but only at the location where he was staying, the

14

agents made a reasonable decision to go to that location. Although the agents knew at the time of the telephone call with Castillo that another individual was present in the trailer, had they declined this opportunity to arrest Castillo, they did not know when, if ever, they could locate Castillo again. Once the agents arrived at the trailer, they could not have simply waited for Castillo to exit the trailer. The operation was time-sensitive due to Castillo's call complaining about the delay and the open area around the trailer gave them no place to wait without the risk of discovery. It was reasonable for the agents to believe that executing the arrest warrant while Castillo was still in the trailer would have been more dangerous than surrounding and subduing him from the vehicle, especially since the agents were aware that another individual was inside the trailer. The record supports the finding that it was reasonable for the agents to lure Castillo out of the trailer by ordering the undercover agent to pull up to the trailer and honk his horn.

"In fast-moving investigations like the one in this case, law enforcement officials can, if circumstances so require, act to prevent a potentially volatile situation from becoming worse." Howard, 106 F.3d at 80. After arresting Castillo and witnessing Maldonado opening and closing the trailer door, the agents were not able to take cover, secure the mobile home, and wait for a warrant because it would have taken some time for all the agents to leave

15

the premises with Castillo.  During this time, the agents would have been vulnerable to possible attack from the individuals in the trailer.  Therefore, the record supports the finding that the agents were reasonable in approaching the trailer door and announcing their presence.  The record also supports the conclusion that the agents' actions were reasonably calculated to protect themselves, Castillo, and the neighboring public.

Under the totality of the circumstances, we conclude that the district court correctly concluded that the agents did not manufacture the exigent circumstances.  Because the agents' entry into the house was valid and the sweep was narrow and confined to areas of the trailer where persons could be hiding, their seizure of the marijuana was also valid.  The marijuana seized was in plain view.  Agents may seize evidence that is in plain view inside a residence without obtaining a warrant.  See Arizona v. Hicks, 480 U.S. 321, 326, 107 S. Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

In sum, the district court did not err in finding that the protective sweep was an appropriate reaction to exigent circumstances which the agents did not create.  The district court correctly denied the motion to suppress.

### III.

Maldonado also objected to the introduction of testimony regarding a prior incident on Rule 404(b) grounds.  See Fed. R.

16

Evid. 404(b).[4]  The district court held a Rule 403 hearing outside the presence of the jury.  <u>See</u> Fed. R. Evid. 403.[5]  The district court excluded the 404(b) evidence after finding the evidence unfairly prejudicial.  Nevertheless, during the trial, the district court allowed the government to introduce the 404(b) evidence on grounds that Maldonado opened the door to such evidence.

The 404(b) evidence concerned a prior arrest of Maldonado and Castillo unrelated to the offense for which Maldonado was convicted.  On May 27, 2003, Maldonado and Castillo were detained in connection with the seizure of over 100 kilograms of marijuana.  Maldonado was driving his father's truck, which he often used, along a road frequently used by narcotics smugglers.  Maldonado and Castillo were driving behind a vehicle carrying marijuana.  The Border Patrol noticed that the vehicle Maldonado and Castillo were driving behind was riding low and stopped both vehicles.  Maldonado and Castillo were detained for questioning.  Although Maldonado denied any knowledge of the marijuana, testimony indicated that both vehicles had two-way radios typically used by drug traffickers.  The radios also had the same serial numbers,

---

[4]Rule 404(b) provides that evidence of other crimes, wrongs, or acts, while not admissible to show character and conformity therewith, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[5]Rule 403 prevents the admission of evidence that is otherwise relevant when its probative value is substantially outweighed by the danger of unfair prejudice.

indicating that they had been bought together as a pair. Maldonado was released and never indicted for this incident ("May 27th incident").

This court reviews a district court's decision to admit evidence over a Fed. R. Evid. 404(b) objection under a heightened abuse of discretion standard in criminal cases. United States v. Fox, 69 F.3d 15, 20 (5th Cir. 1995). "[A] defendant may not complain on appeal that he was prejudiced by evidence relating to a subject which he opened up at trial." United States v. Deisch, 20 F.3d 139, 154 (5th Cir. 1994). Maldonado testified in his own defense at trial. On direct examination, Maldonado indicated that he never suspected that Castillo would store marijuana in the trailer and that he did not know for a fact or have personal knowledge who placed the marijuana in the trailer. The government argued that this testimony left the jury with an impression that Maldonado did not know anything about Castillo's involvement with marijuana and therefore opened the door to evidence surrounding the May 27th incident. The district court allowed the government to question Maldonado about this incident and, in rebuttal, a government witness testified regarding the May 27th incident to impeach Maldonado's statements indicating that he did not know Castillo was involved with marijuana. The district court did not abuse its discretion in admitting this evidence on grounds that Maldonado opened the door to this testimony.

18

IV.

For the above reasons, we conclude that the district court did not err in denying Maldonado's motion to suppress or in permitting the testimony concerning the May 27th incident. The conviction is therefore AFFIRMED.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur because the majority opinion is not plainly inconsistent with our precedent. It does seem, however, that we are coming close to establishing a rule that any yard arrest involving a drug operation can justify a protective sweep of the residence, which would allow an intended exception to the Fourth Amendment to become the rule.