United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 17, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-50194
_____

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                        versus

CESAR CHAVEZ-BARRAZA,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:05-CR-947-ALL

_____

Before JOLLY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Cesar Chavez-Barraza ("Chavez-Barraza") was convicted by a jury of possession of marijuana with intent to distribute and of maintaining an establishment for distribution of marijuana. On appeal, he argues that the district court erred in denying his motion to suppress the evidence seized from his property located at Lettunich Street. We disagree and affirm.

I.

On April 5, 2005, law enforcement officers in El Paso received a tip from a confidential informant ("CI") that Chavez-Barraza was

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

storing 4000 pounds of marijuana at his residence at 1306 Twig Road. The CI led the officers to the house where they waited until Chavez-Barraza returned home. At this point, Officer Triana spoke with Chavez-Barraza in Spanish and obtained his consent to search the residence. Chavez-Barraza signed a written consent form in Spanish permitting the officers to search the residence.

After obtaining Chavez-Barraza's consent, the officers searched the residence at 1306 Twig Road but found no drugs. The officers did, however, discover a mortgage statement on a night stand that was for a second property located at 401 Lettunich Street. The statement was addressed to Chavez-Barraza, his wife Lorena, his sister Anna, and his brother-in-law Manuel Rivera. The parties dispute whether the mortgage statement was plainly visible or mixed into a stack of mail.

Officer Triana placed the mortgage statement in his back pocket and went outside to speak with Chavez-Barraza. He asked Chavez-Barraza if he owned any other properties in the area. When Chavez-Barraza stated that he did not, Triana produced the mortgage statement. At this point, Triana testified, Chavez-Barraza became visibly agitated. He told Triana that his sister owned the Lettunich Street property and that he didn't know who lived there. The officers then decided to visit the Lettunich property. Triana told Chavez-Barraza that he and the other officers were going to go see the second property, and that Chavez-Barraza could drive

2

himself or ride with Triana if he wanted to come along. Chavez-Barraza voluntarily elected to ride with Triana.

The Lettunich Street property included a single building divided into two residences. The back residence could not be accessed from inside the front residence. Chavez-Barraza's mother, who lived in the front residence, gave the officers permission to search her home. They did so and found nothing significant. The officers then asked Chavez-Barraza for consent to search the back apartments, which he claimed to be maintaining. Chavez-Barraza signed a written consent, but he did not have keys to open the door. One of the officers climbed into the building through an upstairs window and found approximately 2,700 pounds of marijuana.

The officers arrested Chavez-Barraza, Mirandized him, and questioned him. Chavez-Barraza confessed that he had rented the back to men who used it to store marijuana and that he had helped to unload the drugs.

Chavez-Barraza was indicted by grand jury on one count of possession with intent to distribute 1,256.54 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of maintaining an establishment for distributing marijuana, in violation of 21 U.S.C. § 856(a)(2) & (b). Chavez-Barraza filed a motion to suppress the evidence against him, which the district court denied without making any factual findings. Chavez-Barraza was tried by jury and convicted on both counts. The district court sentenced Chavez-Barraza to 121 months on each count, to be served

3

concurrently, and Chavez-Barraza timely appealed. We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

On appeal, Chavez-Barraza argues that the district court erred in denying his suppression motion because (1) the discovery and seizure of the mortgage statement occurred outside the scope of Chavez-Barraza's consent; (2) the intervening event of Chavez-Barraza's second consent did not break the causal chain; and (3) Chavez-Barraza's second consent was involuntary. Because we find that Chavez-Barraza's second consent was voluntary, and that it was an intervening act of free will, we assume without deciding that the "seizure" of the mortgage statement was a constitutional violation.

In reviewing a district court's ruling on a motion to suppress, "[w]e view the evidence in a light most favorable to the prevailing party." United States v. Maldonado, 472 F.3d 388, 392 (5th Cir. 2006). Generally, "[w]hen reviewing a ruling on a motion to suppress, the court reviews questions of law de novo and findings of fact for clear error." United States v. Grant, 349 F.3d 192, 195 (5th Cir. 2003), cert. denied 540 U.S. 1227 (2004). Because the district court here made no factual findings, this court may "conduct a more searching review, [but] our analysis will be guided by the testimony and other evidence adduced at the suppression hearing." United States v. Paige, 136 F.3d 1012, 1017

4

(5th Cir. 1998).  "Since findings were not made, we uphold the ruling of the Trial Court if there is any reasonable view of the evidence to support it."  United States v. Montos, 421 F.2d 215, 219 n.1 (5th Cir. 1970).

Generally, "all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation."  United States v. Dortch, 199 F.3d 193, 200-01 (5th Cir. 1999).[1]  "Consent to [a subsequent] search may, but does not necessarily, dissipate the taint of a [prior] fourth amendment violation."  United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993).  "The admissibility of the challenged evidence turns on a two-pronged inquiry:  whether the consent was voluntarily given and whether it was an independent act of free will."  Id.

We first consider whether Chavez-Barraza's second consent was voluntary and conclude that it was.[2]  Chavez-Barraza was not in

---

[1]    Chavez-Barraza argues that because the district court denied his motion to suppress without explanation, we should remand for consideration of the "fruit of the poisonous tree" doctrine. We decline to do so because the record is adequate to support our review.

[2] In evaluating the voluntariness of consent, this court considers:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of

5

custody at the time his second consent was requested; in fact, Chavez-Barraza was only present at the Lettunich Street property because he had chosen to accompany the officers when they left his residence at Twig Road. These facts indicate that Chavez-Barraza was voluntarily accompanying the officers and that his consent was not brought about by coercion on the part of the police.

Furthermore, the circumstances under which the second consent was obtained indicate that Chavez-Barraza was aware that he could have declined to consent to the search. The officers searched the front of the Lettunich Street residence based on the consent given by Chavez-Barraza's mother. When they discovered that they could not reach the entire property from her residence, they then asked Chavez-Barraza for his consent to search the back residence. Furthermore, at the Twig Road search, Chavez-Barraza had limited his consent to a search of the residence, a vehicle, and the storage area. We conclude that Chavez-Barraza knew that he could refuse consent and that the consent he gave was voluntary.

We now turn to consider whether Chavez-Barraza's voluntary consent was an independent act of free will. To determine whether

the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993) (internal quotation omitted).

6

the causal chain was broken between the presumed constitutional violation and Chavez-Barraza's consent, we consider: "(1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." Chavez-Villarreal, 3 F.3d at 128.

Although the presumed violation and the second consent were temporally close, the remaining two factors favor a finding that Chavez-Barraza's second consent was an independent act of free will. After the search, Chavez-Barraza was given the option to stay at Twig Road and chose to accompany the police to the Lettunich Street property. Chavez-Barraza's knowledge that he was free to leave, coupled with his decision not to do so, indicate that his subsequent consent was an independent act of free will. Cf. United States v. Jenson, 462 F.3d 399, 407 (5th Cir. 2006) (noting that there was "no evidence that ... [the defendant] knew he was free to leave," while rejecting the government's argument for a break in the causal chain).[3]

Furthermore, the violation here, if indeed a violation occurred, was not flagrant. Chavez-Barraza does not dispute that he gave the officers a broad written consent to search the Twig Road residence for "contraband or other evidence of drug

---

[3] Furthermore, Chavez-Barraza observed the officers request and obtain his mother's consent before searching her residence. This should have indicated to Chavez-Barraza that the officers were bound to respect his choice.

7

trafficking," but rather contends that his personal papers were not included in the scope of that consent, and that Officer Triana unlawfully seized the mortgage statement by placing it in his pocket and carrying it outside. This conduct was "at worst a ... minor and technical invasion of [Chavez-Barraza's] rights." <u>United States v. Sheppard</u>, 901 F.2d 1230, 1235 (5th Cir. 1990). We therefore conclude that Chavez-Barraza's consent was an intervening act of free will that broke the causal chain.

III.

The ruling of the district court denying Chavez-Barraza's motion to suppress and the judgment of conviction are therefore

AFFIRMED.