**UNITED STATES of America,**

v.

**Luis Gerardo PUERTA–CAZARES, Defendant.**

**No. EP–09–CR–2326–PRM.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 5, 2010.

Steven Richard Spitzer, Assistant U.S. Attorney, El Paso, TX, for United States of America.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Luis Gerardo Puerta–Cazares's (Defendant) "Motion to Suppress Evidence and Statements Pursuant to F.R.C.P. [sic] Rule 12(b)" (Docket No. 35) [hereinafter Def.'s Mot. to Suppress], filed on December 16, 2009; the United States of America's (the Government) "Response to Defendant's Motion to Suppress Evidence" (Docket No. 36) [hereinafter Gov't's Resp.], filed on December 30, 2009; Defendant's "Reply to Government's Response to Defendant's Motion to Suppress" (Docket No. 37) [hereinafter Def.'s Reply], filed on January 7, 2010; and the Government's "Supplemental Response to Defendant's Motion to Suppress Evidence"[1] (Docket No. 38) [hereinafter Gov't's Supp. Resp.], filed on January 11, 2010. After due consideration, the Court is of the opinion that the Motion should be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2009, at one o'clock in the morning, two El Paso Police Department officers responded to a domestic disturbance call on the 6400 block of Snowheights Court in El Paso, Texas. Gov't's Resp. 1; Def.'s Mot. to Suppress ¶ 3. Approximately one hour later, those same officers, upon returning to their vehicles, noticed a person in the back yard of a home across the street.[2] Gov't's Resp. 1. One of the officers thereupon shined his flashlight in the direction of the individual, later identified as Defendant, and the officers observed him duck down behind a rock wall. Id. at 2; Def.'s Reply 3. The officers then crossed the street and approached the open gate to the back yard where the individual was seen. Gov't's Resp. 2. The officers announced their presence and asked Defendant to show himself, but Defendant did not respond. Id. The officers then entered the back yard through the open gate. Id.

Upon entering, the officers encountered Defendant crouching behind a grill wearing only underwear.[3] Id. Upon questioning Defendant, they discovered that he lived in the residence located on the property. Id. When asked for identification, Defendant indicated that his identification was inside the home. Id. One officer began to follow Defendant toward the back entrance of the home when he noticed a "Colt, Government Model 'El Obra Maestra,'.38–Super caliber pistol ... loaded with the hammer cocked"[4] on a table in the back yard. Id. According to the officers, Defendant appeared to be moving toward the pistol rather than the back door to the residence, so one officer positioned himself between Defendant and the pistol while the other officer continued to

---

1. Though neither the Local Rules nor the Federal Rules of Criminal Procedure expressly permit a "supplemental response" or sur-reply to a pre-trial motion, the Court will consider the Government's second response because Defendant's reply contained new arguments to which the Government was entitled to respond.

2. The affidavit accompanying the Complaint states that one of the officers "noticed the silhouette of an individual disappear from view." Complaint (Docket No. 1) 2.

3. The Government's statement of facts seems to indicate that the officers noticed that Defendant wore only underwear after they entered the yard and approached him.

4. It is unclear whether the officer ascertained all of this information about the weapon (including whether it was loaded) just by viewing it, or whether the information was ascertained later upon seizure and examination of the weapon. No allegation is made that the weapon was used at any time.

follow Defendant into the residence to retrieve his identification.[5] *Id.*

Once inside the home, the officer accompanied Defendant to the bedroom, where the officer saw a black gun case containing several magazines on the dresser. *Id.* Defendant retrieved his identification, and thereafter returned with the accompanying officer to the back yard. *Id.* at 3. Once outside, the officers noticed that Defendant was stepping on a small baggy with a white powdery substance, which field tested positive for cocaine. *Id.* The officers then arrested Defendant, seizing the pistol, gun case, and magazines as evidence.[6] *Id.*

On August 18, 2009, the Government filed a one-count indictment against Defendant, charging him with being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(B), 924(a)(2). Docket No. 4. On December 23, 2009, Defendant filed the instant motion to suppress,[7] arguing that the police officers made a warrantless entry into his back yard and home in violation of his Fourth Amendment rights, and requesting that the Court suppress all evidence and statements obtained in the course of his pre-arrest detention and subsequent arrest. Def.'s Mot. to Suppress 2. The Government avers that exigent circumstances justified the officers' entry into the back yard and residence, and that all evidence seized was in plain view. Gov't's Resp. 3–6.

## II. LEGAL STANDARD

■ The Fourth Amendment states in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "Warrantless searches of a person's home are presumptively unreasonable unless the person consents,[8] or unless probable cause and exigent circumstances justify the search." *United States v. Gomez–Moreno,* 479 F.3d 350, 354 (5th Cir.2007). "It is the defendant's burden to prove a Fourth Amendment violation by a preponderance of the evidence." *United States v. Runyan,* 275 F.3d 449, 457 (5th Cir.2001) (citing *United States v. Riazco,* 91 F.3d 752, 754 (5th Cir.1996)). However, the Government has the burden to demonstrate exigent circumstances that justify the warrantless search. *United States v. Wallen,* 388 F.3d 161, 164 (5th Cir.2004).

■ "The curtilage area immediately surrounding a private house has long been given protection as a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept." *Dow Chem. Co. v. United States,* 476 U.S. 227, 235, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986). The area immediately surrounding a home is therefore entitled to the same Fourth Amendment protection from warrantless searches as the home itself. *Fixel v. Wainwright,* 492 F.2d 480, 483 (5th Cir.1974). "When officers have physically invaded this protected area, either to seize evidence or to obtain a view of illegal activities, we have readily condemned such an invasion as violative of the Fourth Amendment." *Id.*

■ However, courts will uphold warrantless searches based upon probable cause and exigent circumstances. *United States v. Maldonado,* 472 F.3d 388, 392

---

**5.** Interestingly, the affidavit accompanying the Complaint states that the officer who remained outside noticed the pistol *after* the other officer entered the home with Defendant. Complaint (Docket No. 1) 2.

**6.** It is unclear from the record whether the officers seized the cocaine.

**7.** The Court granted Defendant's unopposed motion for leave to file the instant motion to suppress "out of time." Docket No. 34.

**8.** The Government does not allege that Defendant consented to the search.

(5th Cir.2006). To enter a residence under exigent circumstances, police officers "first must have probable cause that contraband is inside or that an illegal act is taking place." *United States v. Newman,* 472 F.3d 233, 236 (5th Cir.2006). "Probable cause exists when under the 'totality of the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 237 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Exigent circumstances "include those in which officers reasonably fear for their safety, where firearms are present, or where there is a risk of a criminal suspect's escaping or fear of destruction of evidence." *United States v. Rico,* 51 F.3d 495, 501 (5th Cir.1995). Yet, "where agents create the exigency, the warrantless activity is per se unreasonable and any evidence obtained thereby must be suppressed." *Maldonado,* 472 F.3d at 392–93.

■ "In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person," the Supreme Court articulated the "exclusionary rule," providing that "evidence seized during an unlawful search [may] not constitute proof against the victim of the search." *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Id.* at 485, 83 S.Ct. 407. Additionally, "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest ... is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* (citing *McGinnis v. United States,* 227 F.2d 598 (1st Cir.1955); *Nueslein v. District of Columbia,* 115 F.2d 690 (D.C.Cir.1940)).[9]

## III. ANALYSIS

### A. Hearing

An evidentiary hearing is required on a motion to suppress "only when necessary to receive evidence on an issue of fact." *United States v. Harrelson,* 705 F.2d 733, 737 (5th Cir.1983). The parties do not dispute the facts that form the basis for the instant motion, and the Court finds Defendant's motion meritorious even taking the facts as presented by the Government as true.[10] Therefore, the Court finds that an evidentiary hearing is unnecessary.

### B. Probable Cause

■ The Court must decide as a threshold matter whether the police officers had probable cause to search based on the belief that an illegal act was taking place in the back yard of the residence where Defendant was found.[11] For the

---

9. The Government has not argued that any exceptions to the exclusionary rule apply in this case, and the Court finds no basis upon which to consider issues related to the inevitable discovery, independent source, or attenuation exceptions.

10. As is evident from the Court's statement of the facts, the parties have failed to allege many details about the incident in question, and some ambiguities exist. While a hearing might clarify some facts about what transpired in the back yard and the home, such clarification ultimately would not change the disposition of the Motion. Only a few facts

are essential to the outcome in this case— namely the events and circumstances leading up to the officers' warrantless entry into the back yard—and those facts are sufficiently clear.

11. Defendant focuses his argument on the issue of whether the officers manufactured the exigent circumstances to justify the warrantless entry. *See* Def.'s Reply. However, the probable cause inquiry is a threshold matter that the Court must examine, and the Defendant does make reference to a lack of probable cause in his motion. Def.'s Mot. to Suppress ¶ 2. The Court also notes that no-

reasons that follow, the Court concludes that probable cause was lacking in this case. Therefore, the motion must be granted and the evidence suppressed.

The Government provides four facts to demonstrate the existence of probable cause and exigent circumstances: (1) Defendant ducked down behind a rock wall in the back yard when an officer shined a flashlight in his direction; (2) the events occurred at approximately two o'clock in the morning; (3) the gate to the yard was ajar; and (4) Defendant did not respond or show himself in response to the officers' calls.

In *United States v. Newman,* the agents entered and searched a home based on a "fair probability" that drugs would be found inside. 472 F.3d at 237. The Fifth Circuit upheld the finding of probable cause in light of four pieces of information known to the agents: (1) a drug dealer frequented the house and his rental car was parked nearby; (2) a security system had alerted the residents to the agents' approaching; (3) in response a man fled the premises and scaled an iron fence; and (4) the agents saw suspicious movement from behind a curtain and received no verbal response from the inhabitants. *Id.*

However, the Fifth Circuit cautioned that "the fact that a man dashed out of the house, by itself, is not enough to create probable cause" and that the probable cause determination "would be a close question under a less deferential standard of review" than the plain error standard which it applied. *Id.*

In this case, the officers had substantially less information on which to conclude that there was a "fair probability" that they would find contraband or evidence of a crime in the yard of the home where Defendant was seen. The officers in *Newman* were presented with a constellation of factors, only one of which was the evasive action of the defendant. The defendant's flight [12] in that case was a fact that contributed, to a modest degree, to the totality of circumstances that added up to probable cause. Here, Defendant's evasive act of ducking from the officers' view and remaining silent following their calls form the centerpiece of the probable cause argument. However, an apparent desire to avoid the attention of law enforcement alone does not suggest that a crime is underway and cannot support a finding of probable cause.[13]

where does the Government expressly state that the officers had probable cause in its response to the Motion. Rather, the Government uses language normally associated with the "reasonable suspicion" inquiry, asserting that Defendant's apparent effort to hide and the late hour "gave officers cause to investigate the matter further," and that Defendant's failure to respond to the officers "heighten[ed][the] officers['] concern that a crime might be afoot." Gov't's Resp. 2. In fact, in another section of its brief, the Government states that the officers questioned Defendant "based upon reasonable suspicion," not probable cause. *Id.* at 7. The Court will nevertheless read the Government's argument that exigent circumstances justified the officers' entry as including an implicit argument that probable cause also existed.

**12.** The Supreme Court has stated that "[h]eadlong flight ... is the consummate act of evasion," suggesting that other evasive movements such as hiding contribute somewhat less to the probable cause analysis than "headlong flight," which occurred in *Newman. Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

**13.** Of course, with the benefit of hindsight, one can now surmise that Defendant elected to retreat because he was, allegedly, an alien in possession of a firearm and other contraband. But at the moment of their decision to enter the back yard, the officers' claimed suspicion could only have been a hunch at best.

The Government claims, to no avail, that the late hour (approximate two o'clock in the morning) and open gate increased the officers' suspicions to the level of probable cause. However, the lateness of the hour and the open gate, together with the evasive action on the part of the Defendant, absent other circumstances, still falls short of probable cause. Prior to entering the yard, the officers had no articulable basis upon which to form a suspicion of criminal conduct. In fact, they had completed the activity which accounted for their presence in Defendant's neighborhood. At no time is Defendant seen in possession of contraband or weapons prior to the officers' entry into his back yard. At no time do the officers receive reports of suspicious activity at Defendant's residence. The Court thus concludes that there was not a "fair probability" that the officers would find contraband or evidence of a crime in Defendant's back yard. Though the officers may have reasonably been curious about a man hiding in a yard late at night, mere curiosity cannot provide the basis for an intrusion into the curtilage of a private residence absent probable cause. *See, e.g., United States v. McClain,* 444 F.3d 556, 563 (6th Cir.2005) (stating that "mere speculation that a crime could be occurring is insufficient to establish probable cause").

## C. Exigent Circumstances

■ Though the absence of probable cause to enter Defendant's back yard alone mandates suppression of the evidence seized in this case, the Court, in the alternative, finds that exigent circumstances were lacking. In other words, even if probable cause did exist, exigent circumstances did not justify the officers' warrantless entry into the back yard, and the

Court should exclude the resulting evidence on that basis as well.

"Exigent circumstances include hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Maldonado,* 472 F.3d at 393. None of these circumstances were present when the officers approached Defendant's home. First, the officers were not in hot pursuit of Defendant or any other suspect.[14] Second, at the time that the officers approached the home, they neither suspected nor were aware of evidence that might be removed or destroyed.

Indeed, the Government argues that the officers entered the yard "out of concern for their own safety and the safety of the community." Gov't's Supp. Resp. 2. "In evaluating exigency, we 'consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers.'" *Maldonado,* 472 F.3d at 393 (quoting *United States v. Rodea,* 102 F.3d 1401, 1405 (5th Cir.1996)). The situation as it initially appeared to the officers as they approached the house was simply this: a man was seeking to avoid police attention in a back yard of a residence. The man (Defendant) was not involved or implicated in any way with the incident to which the officers initially responded and investigated. Additionally, he did not appear to be armed. The Court concludes that this set of circumstances did not present an immediate danger to the lives of the officers or other individuals in the neighborhood that required the officers' warrantless entry.

Defendant's failure to respond to the officers' announcement of their presence at the gate also did not present a danger to

---

**14.** In fact, the officers were in the process of leaving the premises to which they initially responded (Defendant's neighbor's house across the street) when they allegedly encountered suspicious behavior.

the officers or the community. It is neither unusual nor alarming that an individual would be curious about police activity in his neighborhood, but also want to conceal his presence from the officers at the scene. Furthermore, under the circumstances, the officers might have reasonably and safely chosen other methods of investigation. For example, they might have chosen to monitor the situation from outside Defendant's yard and wait for events to develop. Likewise, the officers might have chosen to knock on the front door of the residence to alert the owner that they had seen a man in the back yard and to seek consent to investigate. Other methods of investigation might establish probable cause and exigent circumstances, allow time to obtain a warrant or consent, or otherwise clarify whether the officers' suspicions were justified. It goes too far, in light of the protections guaranteed by the Fourth Amendment, to say that an individual's attempt to hide his presence from police officers in his back yard creates an exigency justifying warrantless entry.

## IV. CONCLUSION

The officers lacked probable cause to effect a warrantless entry into Defendant's back yard and therefore violated his Fourth Amendment right to be free from unreasonable searches and seizures. Exigent circumstances were also lacking, providing an alternative basis for the exclusion of the evidence. Thus the Court is obligated by the exclusionary rule to exclude all evidence and statements obtained following the officers' entry into Defendant's back yard, including the pistol, gun case, and magazines.

Accordingly, **IT IS ORDERED** that Defendant Luis Gerardo Puerta–Cazares's "Motion to Suppress Evidence and Statements Pursuant to F.R.C.P. [sic] Rule 12(b)" (Docket No. 35) is **GRANTED**.