# REVISED DECEMBER 17, 2001
## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

————————

m 00-20407

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MILTON TYRONE WATSON,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————
November 12, 2001

Before JONES, SMITH, and DeMoss,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Milton Watson appeals his conviction of il-
legal possession of firearms. Concluding that
the conviction is based on evidence obtained
in possible violation of the Fourth Amend-
ment, we vacate and remand for further pro-
ceedings to determine whether such a violation
occurred.

I.

Undercover officers de la Rosa and Lott
observed police informant Lee Addison paying
a sum of money to Watson in exchange for il-
legal narcotics. Addison had agreed to at-
tempt to purchase drugs while under the offi-
cers' surveillance.

After witnessing the transaction, the offi-

cers radioed their superior, Sergeant Williams, who ordered the warrantless arrest of Addison and Watson. Officer Morse testified that he arrested Watson on the porch of his house, outside the front door, and that Watson was "coming toward the front door of the house from the inside of the house" at the time of arrest. Watson submitted an affidavit confirming his arrest on the front porch.

Officer Coker arrested Addison on the porch. Officers also detained Roderick Mayfield, Watson's friend, and Lincoln Streber, his uncle, both of whom were in the vicinity of the house.

Morse then made a protective sweep of the house to look for dangerous persons. Morse testified that he lacked specific reason to believe other individuals were in the house but that the possibility always exists. During the sweep, Morse found boxes of Swisher cigars, commonly used to make marihuana cigars, and gallon jugs of codeine syrup, an illegal narcotic.

After his arrest, Watson informed Williams that he lived in the house. Williams claims that he requested Watson's permission to "go into the bedroom and get the dope out." Williams told Watson that the officers had seen narcotics and narcotics paraphernalia in the house. At the suppression hearing, Williams and the other officers testified that Watson had consented to the search. Streber and Mayfield testified that they did not hear Williams ask for consent, despite their close proximity to Watson. The search uncovered crack cocaine, marihuana, and four illegal weapons.

A two-count indictment charged Watson with possession of firearms in violation of 18 U.S.C. § 922 (g)(1) and using those firearms in violation of 18 U.S.C. § 924(c). The district court denied Watson's motion to suppress the evidence found in the protective sweep and search of his house, finding that (1) Watson was inside the house when the officers arrived, but they did not arrest him until he went outside, (2) the lawful arrest justified a subsequent protective sweep, (3) the sweep revealed narcotics in plain view and led the officers to request permission to search the house further, and (4) Watson consented to the second search.

Watson pleaded guilty to illegal possession of firearms, and the government agreed to dismiss the other charge. Watson reserved the right to appeal the denial of his motion to suppress. He now challenges the constitutionality of his arrest, of the protective sweep, and of the more extensive later search.

II.

The legality of the arrest turns in part on the question whether Watson was arrested inside his house (as he claims) or outside (as claimed by the government). Warrantless seizures of a person inside his home are "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Only exigent circumstances or consent justify such an arrest. *Id.* at 583. By contrast, an arrest outside a suspect's home is justified if the arresting officers had "reasonable ground" to believe that he had committed a felony. *United States v. Watson*, 423 U.S. 411, 417 (1976). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995).

We must defer to the district court's factual finding that Watson was arrested outside his house, on the porch,[1] "unless [it is] clearly erroneous or influenced by an incorrect view of law." *United States v. Wilson*, 36 F.3d 1298, 1303 (5th Cir. 1994). Moreover, the facts must be reviewed in the light most favorable to the prevailing party. *United States v. Grosenheider*, 200 F.3d 321, 326 (5th Cir. 2000). Under this deferential standard, there is little doubt that the district court's findings must be accepted.

Watson contends that he did not exit the house voluntarily and that he went onto the porch in response to an order by the arresting officers. He claims that the order in itself constituted a seizure. The government, supported by the testimony of the arresting officers, claims that Watson voluntarily exited the house immediately before the arrest. Because Watson fails to offer independent corroboration for his account, the district court's decision to disbelieve it and accept that of the officers is not clearly erroneous and therefore must stand.

Assuming, as we must, that Watson was arrested outside the house on his porch,[2] the le

gality of the arrest must be upheld if the officers had probable cause to believe that he "had committed or was committing an offense." *Wadley*, 59 F.3d at 512. The arresting officer need only know with "fair probability" that the defendant committed the felony, which requires more than a "bare suspicion" but less than a preponderance of evidence. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999).

The facts are almost identical to those of *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985), in which we found probable cause for an arrest that occurred after police had used surveillance to confirm the time, place, and mechanics of a drug transaction about which they had been forewarned by an informant.[3] Similarly, the police observed Watson and Addison exchanging money for a promised delivery of illegal drugs, and there is no doubt that the evidence was "sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Wadley*, 59 F.3d at 512.

### III.

Regarding the legality of the protective sweep of Watson's house, "as an incident to . . . arrest . . . officers [may], as a precautionary measure and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *United States v. Buie*, 494 U.S. 325, 334 (1990). A protective sweep of

---

[1] The district court found that "[a]t the time the officers moved in to arrest Defendant, he was inside the house. The officers brought Defendant outside to arrest him." This is not inconsistent with the government's claim that Watson was taken outside voluntarily or with the district court's ultimate conclusion that the arrest was constitutional.

[2] An arrest on a porch is not considered "inside" the house for purposes of determining its constitutionality under the Fourth Amendment. *Kirkpatrick v. Butler*, 870 F.2d 276, 280-81 (5th Cir.

---

[2](...continued)
1989).

[3] *Cf. Stansel v. United States*, 473 F.2d 1045, 1046 (5th Cir. 1973) (holding that drug purchase by undercover officer created probable cause).

a suspect's house may be made "even if the arrest is made near the door but outside the lodging" if the arresting officers "have reasonable grounds to believe that there are other persons present inside who might present a security risk." *United States v. Merritt*, 882 F.2d 916, 921 (5th Cir. 1989) (internal citation omitted); *see also Kirkpatrick*, 870 F.2d at 282-83 (same).

The mere presence of illegal drugs and weapons does not justify a protective sweep. *United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986). But a sweep is permissible where necessary to prevent the possible destruction of the drugs, especially where this danger is combined with reasonable concern for the safety of officers or civilians. *United States v. Rico*, 51 F.3d 495, 504 (5th Cir. 1995); *United States v. Vasquez*, 953 F.2d 176, 180 (5th Cir. 1992). A district court's finding that there was sufficient danger to justify a protective sweep can be overturned only if it is "clearly erroneous." *Kirkpatrick*, 870 F.2d at 283.

The police knew that Watson and Addison likely had entered the house with drugs, and thus there was a possibility that drugs would be destroyed if not seized quickly. Moreover, the officers believed that there was a possibility that Watson might have additional accomplices who were still inside the house and could pose a threat to the officers' safety. Although the factual basis for these concerns is disputable, they are reasonable enough that we cannot say that the district court was clearly erroneous in upholding the validity of the sweep.

## IV.

In response to Watson's challenge to the full-scale search of his house that the officers undertook after discovering drugs during the protective sweep, the government argues that it was justified because Watson voluntarily consented to it. Watson contends that he did not consent and, in the alternative, claims that any consent was involuntary.

The government bears the burden of proving the existence of voluntary consent to a search; proof must be by a preponderance of evidence. *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991). It is not enough to show the mere existence of consent; the government also must show that "consent was freely and voluntarily given." *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir. 1993). A finding of voluntary consent must be reversed if it "was clearly erroneous or influenced by an incorrect view of law." *United States v. Shabazz*, 993 F.2d 431, 439 (5th Cir. 1993).

The district court did not clearly err in finding, by a preponderance of evidence, that Watson consented, but the court did not consider voluntariness. Therefore, we cannot accept the finding that there was a sufficient degree of consent to justify the search.

With respect to the mere existence of consent, the court properly relied on the testimony of the three officers present, all of whom stated that they saw Watson give consent. Although Watson's witnesses disputed the officers' accounts, the court's decision to accept the officers' testimony in preference to that of the defense witnesses was not clearly erroneous.

In this circuit, district courts must

focus on six factors in determining whether consent to a search was voluntary:

(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Ponce*, 8 F.3d at 997. Because the district court apparently conflated the question of voluntariness with that of the mere existence of consent, it did not apply this test. Consequently, its finding that Watson voluntarily consented to the search of his house must be reversed on the ground that the ruling was "influenced by an incorrect view of law." *United States v. Shabazz*, 993 F.2d 431, 439 (5th Cir. 1993).[4]

On remand, the district court will have to consider the evidence pertaining to each of the six factors and weigh them against each other. It should try to determine Watson's age and education level, which do not currently appear in the record.[5]

In summary, because Watson's conviction for illegal firearms possession was based solely on evidence discovered during the full-scale search of his house,[6] we VACATE the conviction and REMAND for a determination of the question of voluntariness.

---

[4] *See also United States v. Holloway*, 962 F.2d 451, 454 (5th Cir. 1992) (holding that "in reviewing a district court's ruling on a motion to suppress based on live testimony at a suppression hearing, we do not readily accept a district court's factual findings if they are influenced by an incorrect view of law"); *United States v. Elwood*, 993 F.2d 1146, 1151 (5th Cir. 1993) (same).

[5] This court has not opined on how the factors (continued...)

---

[5](...continued) are to be weighed if they point in conflicting directions. One obvious way is to assume that, barring unusual circumstances, the side supported by a majority of the factors should prevail. *Cf. United States v. Casas*, No. EP-99-CR-1070-DB, 1999 WL 33290609, at *8-*9 (W.D. Tex. Nov. 10, 1999) (holding that consent was voluntary because three of the five relevant factors weighed in favor of the government).

[6] Charges based on possession of the illegal drugs found during the protective sweep were dropped as one of the conditions of Watson's plea agreement.