**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-31468**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**BERNARD FERGUSON,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(01-CR-43-ALL-J)**

September 17, 2002

Before REAVLEY, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Bernard Ferguson appeals his guilty-plea conviction for being a felon in possession of a firearm, claiming:  the district court failed to address the voluntariness _vel non_ of the implied consent for the warrantless search that led to his arrest, and this court should therefore remand for a determination on voluntariness; or, alternatively, the implied consent for the search was involuntary, and this court should reverse his conviction and render judgment in his favor.  **AFFIRMED.**

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Ferguson's arrest arises out of members of a joint task force of city, state, and federal law enforcement officers going to the New Orleans apartment of Phyllis Terrell to execute an arrest warrant (probation violations) for Terrell's boyfriend, Charles Dright. They did not have a search warrant.

At Ferguson's suppression hearing, United States Deputy Marshal Brouillett, a task force member, testified: in mid-January 2001, officers received a tip that Dright might be residing at Terrell's apartment; Deputy Brouillett and other officers arrived there after midnight of 30 January 2001; four officers, including Deputy Brouillett and New Orleans Police Officer Smith, approached the front door while other officers stationed themselves around the apartment's perimeter; Deputy Brouillett and Officer Smith knocked, heard a voice inside ask who it was, and replied they were police; they knocked again, received no response, but heard the sound of furniture being moved and people talking; they knocked a third time, and *Ferguson* opened the door; while they spoke with *Ferguson*, Terrell approached the door; Deputy Brouillett and Officer Smith informed Terrell they were police officers, *stated they had a warrant for Dright's arrest*, and asked if he was inside the apartment; Terrell responded that Dright was in the bedroom and pointed to the rear of the apartment; Deputy Brouillett and Officer Smith, believing Terrell had given them permission to enter the

apartment to locate Dright, proceeded to the bedroom and found him there.

Deputy Brouillett further testified: while the above-described events were taking place, officers positioned around the apartment's perimeter radioed that drugs had been tossed from one of the apartment's rear windows; Deputy Brouillett and Officer Smith escorted Dright from the bedroom to the living room where Ferguson and Terrell were located and advised them of their *Miranda* rights; officers began searching the apartment; Deputy Brouillett asked Terrell, Dright, and Ferguson if there were any weapons in the apartment; and *Ferguson* replied affirmatively, directing Deputy Brouillett to a desk drawer containing a semi-automatic pistol.

Officer Smith also testified at the suppression hearing. He largely corroborated Deputy Brouillett's testimony.

On the other hand, Terrell testified to a materially different course of events: Ferguson, her brother, resided at the apartment with her; at the time in question, she was in the bedroom with Dright when she heard two knocks on her front door; after both knocks, she heard Ferguson ask, "Who is it?"; at the third knock, she sent Dright to answer the door; as Dright left the bedroom, there was a kick at the door; she followed Dright, to find officers already in her living room; she was handcuffed and, along with Ferguson, taken outside into a hallway while officers searched the apartment; at some point, they were brought back into the living

3

room, while officers continued the search; the officers found a gun in a desk drawer; and Dright, not Ferguson, claimed ownership of it.

Ferguson was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He moved to suppress, citing *United States v. Steagald*, 451 U.S. 204 (1981), for the proposition that, absent consent or exigent circumstances, officers may not enter and search a person's residence on the basis of an arrest warrant for another. Ferguson claimed a lack of consent and exigent circumstances. Alternatively, and assuming the officers validly entered Terrell's apartment, Ferguson claimed the search exceeded that permitted incident to arrest.

The Government responded: Ferguson lacked standing to challenge the search because he was neither the homeowner nor recorded lessee; alternatively, the officers entered the apartment only *after* they believed they had Terrell's consent to enter; and they inquired about, and discovered, the gun only *after* being advised drugs had been thrown from the apartment.

After conducting the suppression hearing, the district court rendered a detailed order, stating its reasons for denying the motion. *United States v. Ferguson*, No. 01-43 (E.D. La. 12 Sept. 2001). First, it held Ferguson had standing to challenge the search because he had a reasonable expectation of privacy in the

4

apartment, in that he was often an overnight guest, planned to spend *that* night at the apartment, and kept clothes there. (On appeal, the Government does not contest standing.)

Concerning the conflicting testimony about the search, the court found "the Government's version of the events that transpired on the night [Ferguson] was arrested is the most credible". It concluded: Terrell's conduct (answering that Dright was in the bedroom and pointing in that direction) "reasonably led the officers to believe they had her consent to enter the apartment". In so concluding, it noted that Terrell "at no time objected or attempted to stop the officers once they were inside her apartment".

"Under these circumstances", it concluded "it was reasonable for the officers to believe that ... Terrell had not just 'merely acquiesced' to their entering her home, but had affirmatively signaled that they had her permission to come inside and locate ... Dright". (The court also concluded "the officers were reasonable in inquiring whether any weapons were present in the home and in seizing the weapon belonging to [Ferguson] upon learning he was a convicted felon".)

Ferguson entered a conditional guilty plea (reserved right to appeal denial of suppression motion). He was sentenced, *inter alia*, to 63 months imprisonment.

5

II.

In reviewing the denial of a suppression motion, following an evidentiary hearing, "findings of fact are accepted unless clearly erroneous, [and the] ultimate conclusion as to the constitutionality of the law enforcement action is reviewed *de novo*". ***United States v. Orozco***, 191 F.3d 578, 581 (5th Cir. 1999), *cert. denied*, 528 U.S. 1144 (2000). "We view all of the evidence introduced at the suppression hearing in the light most favorable to the prevailing party, in this case the government." Id.

Ferguson neither contests the district court's crediting the Government's version of events nor disputes that Terrell impliedly consented to the officers' entering her apartment when she responded that Dright was in the bedroom and pointed in that direction. Rather, citing ***United States v. Watson***, 273 F.3d 599 (5th Cir. 2001), he emphasizes that valid consent to a search involves *two* components: the *existence* of consent and of *voluntariness*. He claims, *inter alia*, his conviction must be reversed and the case remanded because the district court erred as a matter of law in not addressing the voluntariness *vel non* of Terrell's implied consent. (In the alternative, Ferguson claims: the implied consent was involuntary; therefore, his conviction should be reversed and judgment rendered in his favor. This alternative claim is without merit. As discussed below, we

6

conclude the district court found the consent was voluntary. That finding was not clearly erroneous.)

*Watson*, which also involved a guilty-plea conviction to § 922(g)(1) charges, explained:

> The government bears the burden of proving the existence of voluntary consent to a search; proof must be by a preponderance of evidence. *It is not enough to show the mere existence of consent; the government also must show that consent was freely and voluntarily given.*

*Id.* at 603-04 (internal quotation marks and citations omitted; emphasis added). Addressing the disposition of the suppression motion, *Watson* noted: "The district court did not clearly err in finding ... that Watson consented, *but the court did not consider voluntariness*". *Id.* at 604 (emphasis added). Rather, it had "apparently conflated the question of voluntariness with that of the mere existence of consent". *Id.* "Therefore, [the *Watson* court could not] accept the finding that there was a sufficient degree of consent to justify the search." *Id.* Accordingly, it vacated the conviction and remanded for a voluntariness determination in accordance with the guiding factors stated in *United States v. Ponce*, 8 F.3d 989 (5th Cir. 1993):

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's

7

> belief that no incriminating evidence will be
> found.

*Id.* at 997.

Voluntariness *vel non* is a question of fact, reviewed only for clear error. **United States v. Tompkins**, 130 F.3d 117, 120 (5th Cir. 1997), *cert. denied*, 523 U.S. 1036 (1998). Here, although the district court did not expressly address the voluntariness factors, it did note the voluntariness requirement in its order denying the suppression motion: "Consent to a warrantless search must be voluntary and may be express or implied.... *In determining whether consent is voluntary*, the Court looks to the totality of the circumstances to assess whether the defendant has freely given consent". (Emphasis added.)

The order was attuned primarily to whether the *existence* of consent was implied by Terrell's conduct. On the other hand, in the light of the record, the careful consideration of the suppression motion by the district court, and its acknowledging the voluntariness requirement, we are satisfied the district court considered that requirement and found the consent was voluntary. As noted *supra*, that finding was not clearly erroneous.

### III.

For the foregoing reasons, the judgment is

**AFFIRMED.**