**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 13, 2012

No. 10-50459

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DONALD WAYNE DOWLING,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:05-CR-250-1

Before  HIGGINBOTHAM,  SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Donald Dowling was found guilty after trial of possession of illegal narcotics and sentenced to life in prison.  This court upheld his conviction and sentence.  The district court subsequently denied Dowling's 18 U.S.C. § 2255 post-conviction motion for relief alleging ineffective assistance of trial and appellate counsel.  Pursuant to a certificate of appealability granted by this court on a single issue, Dowling contends that his trial counsel rendered ineffective assistance when counsel failed to file a motion to suppress the narcotics that fell

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50459

from Dowling's pants after his pants were unbuckled and shaken during a traffic stop. We affirm.

I.

This court granted a certificate of appealability on the following single issue:

> whether the district court erred in determining that Dowling was not denied effective assistance by trial counsel's failure to file a motion to suppress the evidence obtained as a result of a search, where the district court did not address the validity of the handcuffed-Dowling's consent to search and did not address whether the search, which entailed the unbuckling of and shaking of Dowling's pants in a store parking lot, exceeded the scope of consent, and where the record gives no indication of counsel's reasons for not filing such a motion.

The district court determined that Dowling's trial counsel was not ineffective because the suppression motion would have been frivolous. "A district court's conclusions concerning a § 2255 petitioner's claims of ineffective assistance of counsel involve mixed questions of fact and law, which we review *de novo*." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (citing *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994)).

A claim of ineffective assistance of counsel based on a failure to raise a motion to suppress is governed by the two-pronged *Strickland* test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. As required by the first prong, Dowling

No. 10-50459

identified an act or omission of his trial counsel that he alleges was not the result of reasonable professional judgment—his trial counsel's failure to file a motion to suppress the narcotics found on his person. *See id.* at 690. In response, the district court must then determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance" considering all of the circumstances at the time of trial counsel's conduct. *Id.*

To meet the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because trial counsel's failure to raise a Fourth Amendment claim is at issue, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

## II.

Dowling's trial counsel filed no pretrial motions. It is undisputed, moreover, that Dowling's bag of narcotics is the only narcotics evidence inculpating him, hence the offense conduct basis for his life sentence.[1] The district court nonetheless explained that it failed "to see how counsel was inept for not filing what appears to be a frivolous motion." That assumption about frivolity rested exclusively on an excerpt from Dowling's trial testimony. The district court quoted how, during direct examination, Dowling agreed that he knew he could have refused consent yet despite that knowledge he permitted the

---

[1] The district court is clear that it did not deny Dowling's ineffectiveness claim on the ground that prejudice was absent. Because Dowling's conviction is based solely on the narcotics evidence in question, it is a certainty that the verdict would have been different without the evidence.

officers to search him.  Specifically, Dowling testified that, in response to an officer's question about whether he had anything in his pockets, "I told them they could look."  This trial testimony by Dowling, the district court held, contradicts any post-conviction claim Dowling can make that his attorney should have contended pretrial that his consent to a search was involuntary or that, even if voluntary, his consent was limited to the pockets of his pants, not an unbuckling of his pants entirely.

On the record before us, we cannot say that a motion to suppress would have been frivolous.  When reviewing whether a search was justified by consent, a district court examines several issues.  First, the government must show that the defendant consented based on the totality of the circumstances. *United States v. Freeman*, 482 F.3d 829, 831–32 (5th Cir. 2007).  Next, the government must show that this consent was voluntary, also based on the totality of the circumstances. *Id.* at 832 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).  District courts focus on six factors to determine voluntariness:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.  All six factors are relevant, but no single one is dispositive or controlling.

*Id.* (quoting *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993)).  Third, the government must show that the search was within the scope of the consent. *Id.* (internal citations omitted).  Scope of consent is governed by objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  The question of objective reasonableness is a question of law that we review de novo, although factual findings explicit in a district court's reasonableness decision are reviewed for clear error. *United States v. Ibarra*,

No. 10-50459

965 F.2d 1354, 1356-57, 1360 (5th Cir. 1992) (en banc); *see also United States v. Harrison*, 918 F.2d 469, 473 (5th Cir. 1990), and *United States v. Tedford*, 875 F.2d 446, 448–49 (5th Cir. 1989).

Only voluntariness and scope of consent are at issue in this appeal. In *United States v. Watson*, 273 F.3d 599 (5th Cir. 2001), the court held that, "[i]t is not enough to show the mere existence of consent; the government also must show that 'consent was freely and voluntarily given.'" *Id.* at 604 (quoting *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir.1993)). The district court in *Watson* conflated the question of voluntariness with that of the mere existence of consent and failed to apply the six factor test. *Id.* As a result, we vacated the conviction and remanded the case in order for the district court "to consider the evidence pertaining to each of the six factors and weigh them against each other." *Id.*

Similarly in this case, the district court devotes no analysis to the voluntariness of Dowling's consent. Having considered the full record ourselves, we perceive that a predominance of relevant factors implies voluntariness. Dowling agreed when his counsel asked him on direct examination whether he "understood that [he] didn't have to let [the police]" look in his pockets. Furthermore, Dowling's assent, coupled with his furtive movements throughout the traffic stop, strongly indicate that he was hopeful that the bag in his pants might not be found. Finally, Dowling was blunt with his own testimony that as a previously convicted felon, he knew his rights, especially his right to refuse consent and to refuse to speak to police. On the other hand, Dowling was not cooperating with repeated police warnings to stop making hand gestures towards his pants. And, as our COA identified, the district court never examined the impact of Dowling's being handcuffed prior to the search of his person on the voluntariness of his confession. Third, trial counsel for Dowling cross-examined each officer to confirm that no one told Dowling he could refuse consent to search. Finally, a careful review of all the police testimony suggests that the

5

unbuckling of Dowling's pants may not have been coterminous with the consent search of his pockets but may instead have been a pat-down triggered by more threatening hand movements towards his waist even while handcuffed and even after being told to stop.

Turning to the related issue of the scope of Dowling's consent, we note preliminarily that this aspect of the Fourth Amendment question was not examined in the denial of Dowling's post-conviction motion as one that "appears to be a frivolous" claim. It is well settled, however, that, "[w]hen the government relies upon consent as the basis for a warrantless search, 'they have no more authority than they have apparently been given by the consent.'" *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666–67 (5th Cir. 2003) (citing Wayne R. LaFave, *Search and Seizure* § 8.1(c) (3d ed. 1996 & Supp. 2003)). Dowling now argues that, in response to the officer's request to search a specific area (i.e., his pockets), Dowling only meant to consent to a search of that specific area. The district court quotes this exchange, however, to conclude that Dowling "gave consent to search his person." The police query and Dowling's acquiescence, as quoted by the district court, cannot support more than a search of Dowling's pockets and hence would not allow an unbuckling of his pants and a full "person" search. Stated otherwise, on the portion of the record quoted by the district court, it would be objectively unreasonable for an officer to interpret a grant of consent to look in someone's pockets as a grant of consent to search the person's entire body. *Cf. United States v. Chaney*, 647 F.3d 401, 406–407, 407 n.7 (1st Cir. 2011) (determining that a "typical reasonable person" would not interpret consent to look in a pocket for identification as "generalized authorization" to search even the entire pocket beyond practical measures, including removal of items that cannot immediately be identified or whose removal is necessary to access other items in the pocket).

No. 10-50459

Once again, however, the full record describes a larger, more plausible context. Each officer who testified did state that Dowling consented to a search of his person, without any pockets limitation. Often this testimony was elicited by counsel for Dowling himself. Furthermore, right after the search of his pockets, which Dowling permitted ("I told them they could look"), the officers testified that Dowling reached for his waistband, even while handcuffed and even against police warning, whereupon the officers unbuckled and shook his pants, dislodging the bag.

On the record before us, and applying Fourth Amendment consent caselaw that requires some sufficient inquiry into both voluntariness of consent and also scope of consent, we cannot agree that the several lines quoted from Dowling's trial testimony made each issue, in hindsight, frivolous as grounds to file a pretrial motion to suppress.

## III.

Because the suppression issue in this case is presented to us through the vehicle of an ineffective assistance of counsel claim, however, we do not end our analysis with the determination that, contrary to the district court's ruling, Dowling had a sufficiently meritorious suppression claim. *See United States v. Culverhouse*, 507 F.3d 888, 897–98 (5th Cir. 2007). We also ask whether counsel performed deficiently in failing to file the motion to suppress. *See id.*

In that regard, counsel is required "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *United States v. Williamson*, 183 F.3d 458, 462–63 (5th Cir. 1999)). In order to determine whether counsel was ineffective, we must be able to analyze the potential strategy behind his decision not to file a motion to suppress. "Without any evidence as to counsel's strategy, we refuse to make hindsight guesses on the matter." *Culverhouse*, 507 F.3d at 898.

7

No. 10-50459

In this case, no hindsight guesses are necessary. *See United States v. McGrew*, 397 Fed. App'x 87, 94 (5th Cir. 2010) (unpublished) (citing *Strickland*, 466 U.S. at 689) (reversing when "it is impossible to conclude without further factual development that [defendant's] trial counsel's decision not to file a motion to suppress was 'strategic, conscious, and informed'"). Dowling's defense strategy, from the first moment of apprehension, was the opposite of the one he seeks to propound now having been convicted. *See Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992) ("Having a 'wide range' [of professionally competent assistance] necessarily allows for situations in which each of two opposite courses of action may properly fall within the ambit of acceptable professional conduct."). Consistent with talking freely to the police after being read *Miranda* warnings, and consistent with giving police unrestricted access to his apartment, Dowling took the position that he did not know the bag given to him contained narcotics, a lack of knowledge and intent that he claimed was corroborated by his full cooperation with the police. Under oath at trial, Dowling described how he had been tossed the bag from the driver of the vehicle but did not know it contained narcotics; how he then offered no resistance to the police; how he "told them they could look"; how he knew he could have refused that look; how he spoke freely to the police knowing that he did not have to; how he consented to a search of his apartment; and how he insisted to the police that, "'I don't have anything to do with that [the fallen bag]. You know, it just–it just got throwed at me right then.'" His counsel asked him, "Now, Mr. Dowling, the most important question I want to ask you, did you know there was methamphetamine in that bag when you took control of it?" Dowling answered that he did not, and Dowling even told the jury he had volunteered to the police to take a lie detector test.

In the context of this sworn version of his own offense conduct, Dowling's counsel took a blunt approach in opening argument, highlighting that, "[w]e

don't convict people for things they don't know about . . . . Someone can have a bag of methamphetamine in their pocket and not know what it is." And, decisively embracing the interaction with the police Dowling now disavows, trial counsel told the jury it would "hear testimony that Mr. Dowling freely consented to being searched" and that had he known about the drugs, he would not voluntarily have consented to the search that dislodged the bag:

> Now, when a police officer tells you, "May I search you?" and makes it known that you can say "no," then what fool is going to say, "Okay, you can search me. You can search me since I've got a bag of methamphetamine in my pants. Go ahead and search me and get the evidence"?
> Anybody that has any smarts at all is going to say, "No, you may not search me," and then you're given Miranda warnings which say anything you say may be used against you.
> Mr. Dowling talked to the officers, told them—after being told, "You don't have to say anything"—that he did not know and understand that there was any methamphetamine in that bag which Corrina Vanderburg had thrown at him.

Likewise, in closing argument, trial counsel told the jury, "if you will recall his testimony, he testified he didn't know what that substance was or what could have been in that package," and that, "Mr. Dowling testified that he knew he had the right to refuse consent" but instead cooperated, consented, and spoke freely to police, and, finally, that, "Mr. Dowling and the police officers pretty much corroborated each other, what happened, what they did, how he consented, how they searched him, and all that."

It is notable that this defense strategy not only conformed to Dowling's sworn testimony but also led to Dowling's successful motion for acquittal on the conspiracy count, contending that there was no evidence about his conspiring with the person he asserted threw him the bag. It furthermore was the basis for his companion motion for acquittal on his substantive narcotics charge on the

No. 10-50459

ground that he lacked knowledge of its contents; that motion failed, but many things, having full reference to our consent, may work contrariously.

Based on this comprehensive trial strategy that incorporated Dowling's testimony under oath and that led to an acquittal on one of the two charges, we cannot say trial counsel's strategy falls outside the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689 (internal citations and quotations marks omitted); *see also United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999)) ("If a tactical decision is 'conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"). We AFFIRM the district court's order denying relief.