# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2021

Lyle W. Cayce
Clerk

No. 20-30256

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SONNY SCOTT,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-9153

Before ELROD, WILLETT, and ENGELHARDT, *Circuit Judges*.
DON R. WILLETT, *Circuit Judge*:

We withdraw the court's prior opinion of July 1, 2021 and substitute the following opinion.

Following an investigatory stop, officers searched Sonny Scott, found a firearm and drugs on his person, and charged him with felony firearm possession, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Scott contested the lawfulness of the stop and asked his counsel to file a motion to suppress; counsel did not. Scott pleaded guilty, and the district court sentenced him to 100 months' imprisonment. Following an unsuccessful

No. 20-30256

direct appeal, Scott filed this § 2255 motion, seeking to vacate his sentence on two grounds: (1) counsel provided ineffective assistance by failing to move to suppress the unlawfully obtained evidence; and (2) his conviction was unconstitutional under the Supreme Court's decision in *Rehaif v. United States*.[1] The district court denied the motion but granted a certificate of appealability on Scott's ineffective assistance claim and his *Rehaif* claim. Scott now concedes that his *Rehaif* claim is foreclosed by our decision in *United States v. Lavalais*, so we do not address this issue.[2] Because we conclude that counsel's performance was constitutionally adequate, we affirm the denial of his ineffective assistance claim.

I

On January 12, 2017, Drug Enforcement Administration (DEA) agents planned a buy-bust operation of a suspected drug dealer. DEA agents received a tip that the drug dealer drove a black Audi SUV and frequently conducted drug transactions at the Stay Express Inn and Suite in New Orleans, which was in a "known . . . high crime and high drug trafficking area." Around 10:00 p.m., DEA agents established surveillance in the hotel parking lot. About 15 minutes later, a black Audi SUV—the suspected drug dealer's vehicle—parked in the parking lot. At approximately 10:30 p.m., a man, later identified as Sonny Scott, rode into the parking lot on a

---

[1] 139 S. Ct. 2191 (2019). In *Rehaif*, the Court held that 18 U.S.C. §§ 922(g) and 924(a)(2) require proof that the defendant knew he was a felon. *Id.* at 2194.

[2] 960 F.3d 180 (5th Cir. 2020). In *Lavalais*, we rejected the same argument that Scott made in his § 2255 motion; namely, that *Rehaif* errors are structural errors that warrant reversal, even in the absence of prejudice. *Id.* at 184. We instead held that defendants must show that any *Rehaif* error actually prejudiced the outcome. *Id.; see also Greer v. United States*, No. 19-8709 at 6, 141 S. Ct. 2090 (2021) ("In sum, as the Fifth Circuit aptly stated, demonstrating prejudice under *Rehaif* 'will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons.'" (quoting *Lavalais*, 960 F.3d at 184)).

motorcycle. "Agents observed Scott meet with an individual and conduct, what experienced law enforcement officers believed to be, a 'hand to hand' narcotics transaction." Around 10:44 p.m., another individual entered the black Audi SUV and left the hotel parking lot. "Just moments later," one of the DEA agents observed Scott leaving the parking lot on his motorcycle.

DEA agents then initiated and executed the planned buy-bust operation of the suspected drug dealer at a local Wal-Mart; Scott was not present at, or involved in, that buy-bust.

Later that night, DEA agents observed Scott in the drive-thru of a Taco Bell. The agents approached Scott to conduct an investigatory stop, handcuffed him for their safety, and performed a protective search, finding a loaded revolver, multiple clear plastic baggies containing heroin, and various colored tablets in a clear plastic bag. The agents arrested Scott and subsequently learned that Scott had three prior felony convictions, which prohibited him from possessing a firearm.

Scott was charged with felony possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court appointed Rachel Yazbeck as Scott's counsel.

The prosecutor provided Yazbeck with 31 pages of discovery, which included a redacted version of the DEA agents' report, Scott's prior criminal history, and photographs of the weapon and drugs found on Scott. Yazbeck provided Scott with the DEA report. After reviewing it with Yazbeck, Scott contested its contents, denying that he engaged in the alleged drug transaction and explaining that he did not know the suspected drug dealer, the target of the buy-bust operation. Scott asked Yazbeck to file a motion to suppress the evidence. Yazbeck told Scott that she did not believe the motion would be successful. After their conversation, Scott "backed off" from

seeking a suppression motion, and Yazbeck did not file one. Scott decided to plead guilty.

Scott pleaded guilty, without a plea agreement, to the felony firearm possession charge and admitted to the facts set forth in the factual basis. That factual basis described the circumstances leading up to the discovery of the firearm on Scott as follows: DEA agents were conducting surveillance of suspected drug distributors in an area that they knew as a common location for drug trafficking when they "observed Scott meet with another individual and quickly depart the rear parking lot of the Stay Express Inn." The factual basis also provided information about the items found on Scott's person, including $250 cash, three grams of heroin, approximately three grams of cocaine, numerous unidentified pills in clear plastic bags, and a loaded revolver.

The district court accepted Scott's guilty plea and sentenced him to 100 months' imprisonment and 3 years' supervised release. Scott directly appealed his sentence, and we affirmed.[3]

Scott, proceeding pro se, filed a motion to vacate his sentence under 28 U.S.C. § 2255, asserting that he was subject to an unlawful search and seizure, in violation of the Fourth Amendment, and he received ineffective assistance of counsel, in violation of the Sixth Amendment. Scott claimed that Yazbeck rendered ineffective assistance because she did not file a motion to suppress the evidence that was the result of the DEA agents' allegedly unlawful search.

The district court held an evidentiary hearing on Scott's ineffective assistance of counsel claim. Yazbeck testified at that hearing, and Scott was

---

[3] *United States v. Scott*, 730 F. App'x 244 (5th Cir. 2018), *cert. denied* 139 S. Ct. 473 (2018).

No. 20-30256

represented by other counsel. When asked why she did not file a suppression motion, Yazbeck cited two reasons: (1) based on her professional experience and review of the record, she believed the motion would not be successful; and (2) she was concerned that information about the hand-to-hand drug transaction might come out at a suppression hearing, which could subject Scott to drug-related charges.

After the hearing, the district court found that "a motion to suppress, had it been filed, may have been meritorious." But the district court determined that Yazbeck made a strategic decision to forego a suppression motion. The district court credited Yazbeck with considering "the potential negative consequences for Scott if a suppression hearing w[ere] held," including her concerns that Scott might be charged with drug offenses and that the motion might undermine her efforts to facilitate cooperation with the prosecution. The district court concluded that Scott had failed to show that Yazbeck's performance was constitutionally inadequate and denied his ineffective assistance claim.

Scott filed a motion to reconsider, which the district court denied. The district court granted a Certificate of Appealability on whether Scott was denied his Sixth Amendment right to effective assistance of counsel.

II

When evaluating the denial of a § 2255 motion, we review the district court's factual findings for clear error and its legal conclusions de novo.[4] We

---

[4] *United States v. Phea*, 953 F.3d 838, 841 (5th Cir. 2020).

No. 20-30256

review the district court's determinations concerning ineffective assistance of counsel claims de novo.[5]

### III

A defendant seeking relief for ineffective assistance must satisfy the *Strickland v. Washington* test, which requires the defendant to show that (1) "counsel's performance was deficient" and (2) "the deficiency prejudiced the defense."[6]

To satisfy *Strickland*'s performance prong, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."[7] We assess reasonableness "from counsel's perspective at the time of the alleged error and in light of all the circumstances."[8] Our review of counsel's performance is "highly deferential," and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[9] A defendant must overcome that presumption by proving "that counsel's representation was unreasonable

---

[5] *United States v. Shepherd*, 880 F.3d 734, 740 (5th Cir. 2018).

[6] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see also United States v. Dowling*, 458 F. App'x 396, 397–98 (5th Cir. 2012) (noting that *Strickland* governs ineffective assistance claims based on counsel's failure to raise a motion to suppress).

[7] *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 687–88).

[8] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 689).

[9] *Strickland*, 466 U.S. at 689.

under prevailing professional norms and that the challenged action was not sound strategy."[10]

Scott argues that Yazbeck's decision to forego a suppression motion was not strategic because she incorporated legal and factual errors into her analysis of the relative costs and benefits of filing a suppression motion. Scott argues that Yazbeck misunderstood controlling Fourth Amendment law on the legality of *Terry* stops. However, Yazbeck's testimony demonstrates she was familiar with controlling law. Scott's argument is better understood as a challenge to the correctness of Yazbeck's application of Fourth Amendment law; he argues that Yazbeck erred in concluding that the agents had reasonable suspicion to stop him.[11] Yazbeck testified that she considered the totality of the circumstances when determining whether the DEA agents had reasonable suspicion, including their surveillance of Scott in a high-crime area, their observation of Scott's presence (spatially and temporally) in the hotel parking lot near the suspected drug dealer's vehicle, and their observation of Scott engaging in what they believed to be a narcotics transaction.[12] Scott fails to demonstrate that it was unreasonable for Yazbeck to conclude, based on the information known to her at the time, that the

---

[10] *Kimmelman*, 477 U.S. at 381 (citing *Strickland*, 466 U.S. at 688–89).

[11] Because an officer's "temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes," *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013), an officer may "conduct a brief, investigatory stop"—without violating the Fourth Amendment—"when the officer has a reasonable, articulable suspicion that criminal activity is afoot," *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

[12] *See United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000) ("Reasonable suspicion cannot be reduced to a neat set of legal rules, but must be determined by looking to 'the totality of the circumstances—the whole picture.'" (quoting *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989))).

No. 20-30256

agents had reasonable suspicion to stop Scott.[13] And he fails to identify any prevailing professional norm that Yazbeck violated.[14]

Scott argues that Yazbeck's decision was unsound because her analysis incorporated factual errors about the contents of the DEA report. Scott points to portions of Yazbeck's testimony at the evidentiary hearing to support this claim, but that hearing occurred three years after Yazbeck represented Scott. And, more importantly, the relevant inquiry is whether Yazbeck knew the facts at the time she represented Scott, and Scott does not make any argument to that effect.[15]

Scott also argues that Yazbeck's decision to forego a suppression motion was not sound strategy because she made her decision on "incomplete information" without "vet[ting] or even mak[ing] a cursory effort to look into the applicable facts" concerning the legality of the agents' stop. This argument boils down to whether the scope of Yazbeck's investigation was reasonable.

In general, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

---

[13] Although the Government later proffered that the agents did not see drugs change hands between Scott and the individual in the parking lot, this information was not available to Yazbeck when she evaluated the suppression issue. We do not consider this information in evaluating the reasonableness of Yazbeck's decision, and we make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

[14] *See Kimmelman*, 477 U.S. at 381 (citing *Strickland*, 466 U.S. at 688–89) (noting that defendant bears the burden of showing counsel's decision "was unreasonable under prevailing professional norms").

[15] *See Wiggins*, 539 U.S. at 523 (providing that courts' objective review of counsel's performance "includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'" (quoting *Strickland*, 466 U.S. at 689)).

No. 20-30256

unnecessary."[16] While "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable," those "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[17]

Before she decided not to file a suppression motion, Yazbeck's investigation included: reviewing the 31 pages of discovery from the prosecutor, which included the DEA report; discussing the DEA report with Scott, who denied conducting a drug transaction; and conducting legal research to see if there were similar factual scenarios that would support the filing of a suppression motion. Yazbeck admitted that she did not conduct any independent investigation before making that decision.

Scott argues that Yazbeck should have conducted an independent investigation because the DEA report was facially inadequate to prove the legality of the agents' stop, and he denied that a drug transaction had occurred. Admittedly, the DEA report is partially redacted, with some gaps in information, and it does not specify the facts that informed the agents' belief that a drug transaction had occurred. But Scott does not explain why those deficiencies would have prompted a reasonable attorney to investigate further or file a motion to suppress, and he does not point to any authority to

---

[16] *Adekeye v. Davis*, 938 F.3d 678, 682–83 (5th Cir. 2019) (quoting *Strickland*, 466 U.S. at 691); *see* ABA Criminal Justice Standards for the Defense Function, Standard 4-4.1 Duty to Investigate and Engage Investigators (4th ed. 2017).

The Supreme Court has recognized the ABA standards as "prevailing norms of practice" that may function as "guides to determining what is reasonable" performance. *Strickland*, 466 U.S. at 688.

[17] *Strickland*, 466 U.S. at 690–91.

support this argument.[18] And, although Scott denied that the drug transaction occurred, he did not identify any specific information that would have required a reasonable attorney to move to suppress.

To support his argument that Yazbeck could not have made an informed tactical decision without investigating the circumstances of the stop, Scott relies on the Eleventh Circuit's decision in *Holsomback v. White*, which involved a sexual abuse case where counsel failed to conduct any investigation into the conceded lack of medical evidence.[19] Specifically, counsel decided not to contact the examining physician or to subpoena medical records that would disprove the alleged abuse because he was concerned about harmful testimony from the doctor or harmful medical evidence that could be used against the defendant.[20] The Eleventh Circuit held that counsel's asserted fear was unreasonable.[21] *Holsomback* is distinguishable from this case. In *Holsomback*, counsel knew that there was no medical expert evidence of sexual abuse to corroborate the victim's testimony; this lack of evidence would have prompted a reasonable attorney

---

[18] Scott cites *Hinton v. Alabama* where the Supreme Court noted that counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." 571 U.S. 263, 274 (2014). But *Hinton* is distinguishable because Scott is arguing that the contents of the DEA report should have prompted Yazbeck to investigate further, not that Yazbeck was ignorant of Fourth Amendment law.

*See also Wiggins*, 539 U.S. at 527 ("In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. . . . [A] reviewing court must consider the reasonableness of the investigation said to support that strategy." (citing *Strickland*, 466 U.S. at 691)).

[19] 133 F.3d 1382 (11th Cir. 1998).

[20] *Id.* at 1388.

[21] *Id.*

No. 20-30256

to make inquiries. Here, by contrast, Scott asserts that he denied the hand-to-hand transaction that conflicted with the DEA report, but this bare assertion, without more, fails to demonstrate that Yazbeck had specific information that would have put a reasonable attorney on notice that it was necessary to question and investigate the contents of the DEA report.[22]

---

[22] This case is more analogous to *Strickland* and *Bobby v. Van Hook*, 558 U.S. 4 (2009). As the Court in *Van Hook* noted, both were cases "in which defense counsel's 'decision not to seek more' mitigating evidence from the defendant's background 'than was already in hand' fell 'well within the range of professionally reasonable judgments.'" 558 U.S. at 11–12 (quoting *Strickland*, 466 U.S. at 699).

In contrast, this case is distinguishable from *Wiggins v. Smith*, 539 U.S. 510, 525 (2003), where the "defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face." *Van Hook*, 558 U.S. at 11. It is also distinguishable from *Rompilla v. Beard*, 545 U.S. 374, 389–93 (2005), where defendant's attorneys failed to act while potentially powerful mitigating evidence "would have been apparent from documents any reasonable attorney would have obtained." *Van Hook*, 558 U.S. at 11.

Scott contends that even if Yazbeck's decision not to investigate appears to meet the objective standard of reasonableness *on the present record*, we should nonetheless *remand* to allow Scott to offer testimony from a subsequently hired investigator that the district court barred. This contention is unavailing. As a matter of law, such evidence would not be relevant to the dispositive issue: namely, whether Yazbeck's decision not to investigate was reasonable at the time, without "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. As we have held, "[e]ffectiveness in failing to investigate turns on 'whether the *known* evidence would lead a reasonable attorney to investigate further.'" *Skinner v. Quarterman*, 528 F.3d 336, 345 (5th Cir. 2008) (emphasis added) (quoting *Wiggins*, 539 U.S. at 527). "Counsel's duty is to *reasonably* investigate or make a *reasonable* decision that no further investigation is necessary . . . . [g]iven the information known to counsel at the time." *Woodfox v. Cain*, 609 F.3d 774, 811 (5th Cir. 2010). Because the evidence that Scott wishes to present was not known to Yazbeck at the time that she decided not to investigate, it does not bear on the reasonableness of Yazbeck's decision. Here, a remand is not appropriate. *Cf. Nelson v. Davis*, 952 F.3d 651, 666 (5th Cir. 2020) (holding a remand to be unnecessary in an ineffective-assistance case because "[n]o evidence [the habeas petitioner] could uncover with the aid of further investigative funding would affect our determination . . . that counsel's investigation of the[] [relevant] issues was reasonable based on what they knew at the time.").

No. 20-30256

Even if we assume Yazbeck should have conducted a more extensive investigation, we have recognized that, "despite lackluster investigation," defense counsel can provide constitutionally adequate assistance where the "decision not to investigate was part of a clearly developed defensive strategy."[23]

Yazbeck's decision to limit her investigation and forego a suppression motion was part of her defensive strategy to proceed with the plea process and limit Scott's exposure to enhanced sentencing or additional drug-related charges.[24] Yazbeck was concerned that, if agents testified that they observed Scott engage in a drug transaction and provided more information at a suppression hearing, the district court might consider Scott a drug dealer or drug user, and the prosecution might bring additional drug-related charges against Scott.[25] Before Scott pleaded guilty and during the time that she was considering the merits of a suppression motion, Yazbeck took other actions that were consistent with this defensive strategy. For example, Yazbeck objected to the PSR's inclusion of a hand-to-hand drug transaction, and she worked with the prosecutor to eliminate any mention of the hand-to-hand drug transaction from the factual basis.

Yazbeck's decision to forego a suppression motion was also part of her strategy to facilitate cooperation with the prosecution on the sole charge of felony firearm possession. Before Scott pleaded guilty, Yazbeck arranged a

---

[23] *Shepherd*, 880 F.3d at 742 (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985)).

[24] *See United States v. Molina-Uribe*, 429 F.3d 514, 519–20 (5th Cir. 2005) (noting that counsel chose a particular defense strategy, albeit an unusual one, because the alternatives exposed the defendant and counsel to other legal risks).

[25] *Compare United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (counsel provided no sworn record testimony to explain the strategy behind his decision not to file a motion to suppress).

cooperation meeting with the prosecutor. Although that cooperation meeting was ultimately unsuccessful because Scott "shut down" and did not want to answer agents' questions about the events leading to his arrest, Yazbeck did not know that the meeting would prove unsuccessful.[26]

Yazbeck "was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."[27] At the time of her decision regarding the suppression motion, Yazbeck knew that agents had found drugs on Scott and observed what they believed to be a drug transaction between Scott and another individual, and the prosecutor had only charged Scott with felony firearm possession, despite this additional information. It was not unreasonable for Yazbeck to worry that the prosecutor might attempt to bring additional charges against Scott, and it was not unreasonable for Yazbeck to focus her efforts on reducing Scott's felony firearm possession through cooperative efforts, rather than challenging the legality of the stop with the potential risk that additional charges would be brought against Scott.[28]

In sum, Scott has not met his burden to show that Yazbeck's decision to forego a suppression motion "was unreasonable under prevailing professional norms and that [her decision] was not sound strategy."[29] Scott

---

[26] *See Strickland*, 466 U.S. at 689 (requiring courts to make "every effort . . . to eliminate the distorting effects of hindsight").

[27] *Harrington v. Richter*, 562 U.S. 86, 107 (2011).

[28] *See Premo v. Moore*, 562 U.S. 115, 126 (2011) ("In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take.").

[29] *Kimmelman*, 477 U.S. at 381 (citing *Strickland*, 466 U.S. at 688–89).

No. 20-30256

thus fails under *Strickland*'s first prong, and we do not need to address whether Scott has satisfied *Strickland*'s prejudice prong.[30]

IV

There are "countless ways to provide effective assistance in any given case,"[31] and this case is not one of the "rare" "situations in which the 'wide latitude counsel [has] in making tactical decisions' will be limited to any one technique or approach"—here, the filing of a motion to suppress.[32] Scott's counsel provided constitutionally adequate representation when she decided to forego a suppression motion to follow her strategy of preventing additional charges from being brought against Scott.

Because Scott has failed to show that his counsel's performance was constitutionally deficient, we AFFIRM the denial of Scott's ineffective assistance claim.

---

[30] *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

[31] *Strickland*, 466 U.S. at 689.

[32] *Harrington*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689); *see also Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").